UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **DZHEISON FORD** | **CIVIL ACTION NO. 20-1170** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **TIMOTHY DUCOTE, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Petitioner Dzheison Ford, a detainee at Jackson Parish Correctional Center in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241. He asks the Court to "remedy his unlawfully prolonged detention without a bond hearing." [doc. # 1, p. 1].

For reasons below, the Court should grant the petition in part, and instruct the immigration court to conduct a bond hearing[1] at which Respondents shall have the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk.

### Background

Petitioner is a citizen of Russia who, on September 3, 2019, arrived at the Hidalgo, Texas, Port of Entry and applied for admission. Petitioner concedes "he was inadmissible for

---

[1] A bond hearing before an immigration judge is more appropriate than a bond hearing here "because an immigration judge is in a better position to conduct the sort of individualized review that is necessary to determine if Petitioner should be released during the pendency of [his] asylum case." *Maldonado v. Macias*, 150 F. Supp. 3d 788, 812 (W.D. Tex. 2015).

lack of entry documents." [doc. # 1, p. 1]. He is detained under 8 U.S.C. §1225(b)(1)(B)(ii), and despite two requests, he has not had a bond hearing. He has no criminal convictions. *Id.*

On March 3, 2020, an immigration judge denied Petitioner asylum based on the "third country transit" rule, [2]but granted withholding of removal under 8 U.S.C. § 1231(b)(3). [doc. # 1, pp. 1, 4]. Petitioner was not released, though, because on April 2, 2020, DHS appealed to the Board of Immigration Appeals ("BIA"). *Id.* Petitioner argues that he is likely to succeed before the BIA because two courts have recently found that the third-country-transit rule was invalid or unlawful. [3]*Id.* at 5.

Petitioner maintains that he "faces many more months of detention" and that the "delay at the BIA" is not his fault. *Id.* "[H]is detention is likely to continue for at least another six months, and potentially a lot longer if the case is remanded to the immigration judge." *Id.* at 8. He argues that prolonged detention without a bond hearing under 8 U.S.C. §1225(b)(1)(B)(ii), is unconstitutional under the Due Process Clause of the Fifth Amendment. *Id.*

Petitioner primarily seeks an immediate bond hearing. For example, he seeks to "remedy his unlawfully prolonged detention without a bond hearing." *Id.* at 1. He alleges that he "is entitled to a bond hearing . . . ." *Id.* at 2. That said, he asks *this Court* to hold a bond hearing. *Id.* at 2. Alternatively, he asks the Court to order the immigration court to conduct a bond hearing. As a another alternative, he simply seeks release "on his own recognizance or under parole, bond or reasonable conditions of supervision . . . ." [doc. #s 1, p. 9; 14, p. 8]. He also seeks immediate release while this Petition is pending, a judgment declaring that his detention is

---

[2] 8 C.F.R. § 208.13(c)(4).

[3] Petitioner cites *Capital Area Immigrants' Rights Coalition v. Trump*, Civil Action No. 19-2530 (TJK), 2020 U.S. Dist. LEXIS 114421, *7-8 (D.D.C. June 30, 2020), and *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 857-58 (9th Cir. 2020).

"unauthorized by statute" and unconstitutional, reasonable costs, attorneys' fees, and "any further relief that this Court may deem fit and proper." [doc. # 1, p. 9].

Respondents "move this Court to deny Petitioner's request on the basis that his detention is lawful and authorized by statute." [doc. # 13, p. 1]. They "also submit that the duration of Petitioner's pre-removal order detention without a bond hearing is neither so unreasonable nor so arbitrary as to violate the Due Process Clause." *Id.*

## Jurisdiction

Under 28 U.S.C. § 2241(c)(3), the Court enjoys federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States." See *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). However, the 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings. See Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005). District courts may not review challenges to final orders of removal. 8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole," 8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute. *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); see *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of

3

individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues," *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); see also *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

## **Law and Analysis**

Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." As Respondents note, the Section "imposes no limit on the length of [Petitioner's] detention nor does it authorize individual bond determinations." [doc. # 13, p. 3]. The Constitution, however, does require an individualized bond determination under the circumstances here.

Respondents disagree, citing *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). There, the Supreme Court observed:

> [A]liens detained under 8 U.S.C. §1225(b)(1), are "detained for 'further consideration of the application for asylum. . . . Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings. . . . In sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the

> completion of applicable proceedings and not just until the moment those proceedings begin.

*Id.* (emphasis added). The Court did not address the specific question here; rather it overruled the Ninth Circuit's decision that Section 1225(b) imposes an implicit 6-month time limit on detention and that, after that 6 months, the Government may detain the alien only under §1226(a), which includes a provision for granting bond. It did not address whether due process may require bond hearings for aliens detained under 1225(b). Petitioner, in other words, does not argue that he has a *statutory* right to release or to a bond hearing, he argues that his prolonged, arbitrary[4] detention without a bond hearing is *unconstitutional*.

Respondents also argue:

> [I]inadmissible aliens seeking entry, such as Petitioner, are subject to the "entry fiction." See *Zadvydas*, 533 U.S. at 693. Under the "entry fiction" aliens who have been denied admission to the United States yet are present within its borders are "treated, for constitutional purposes, as if stopped at the border," and are thus not entitled to the full range of constitutional protections to which citizens and aliens who have been admitted are entitled. Id. (quotation marks omitted). No matter how long Petitioner spends in immigration detention or even on parole, an alien who has not been formally admitted is treated by the law as if he were physically outside American territory and is therefore "entitled to something less than the full panoply of rights usually conferred by the Due Process Clause." *Id*.; see 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of [an arriving] alien shall not be regarded as an admission of the alien."). In applying this standard to the case at bar, two concepts are clear. First, it is abundantly clear that the due process rights afforded to Petitioner as an arriving alien are not those of the "traditional standards of fairness encompassed in due process of law[,]" but rather, Petitioner's due process rights flow from those prescribed by Congress. *Shaughnessy v. United States, ex rel. Mezei*, 345 U.S. 206, 212, (1953).

[doc. # 13, pp. 5-6].

---

[4] Considering that the applicable statute requires the Government to detain Petitioner, the Government's actions are not completely arbitrary.

5

Even if, however, Petitioner is subject to the "entry fiction," "not entitled to the full range of constitutional protections" and "entitled to something less than the full panoply of rights usually conferred by the Due Process Clause," that "something less" here includes a bond hearing, lest Petitioner be subject to further indefinite detention.[5]

Respondents cite *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1981 (2020), where the petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." The Court held:

> While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. See N*ishimura Ekiu v. United States*, 142 U.S. 651, 660, 12 S.Ct. 336, 35 L.Ed. 1146 (1892). Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id.* at 1963.

Here, Petitioner does not argue that the IIRIRA precludes judicial review of a flawed credible-fear proceeding. Further, he does not seek greater rights than what Congress "set" for an "alien's lawful entry into this country" because he does not challenge the conditions for his lawful entry. Rather, he seeks release on bond pending a decision on his authorization to enter. As Petitioner reasons, his "deprivation of liberty bears no relation to the merits of his application for relief from removal[.]" [doc. # 14, p. 7].

---

[5] While, as Respondents note, Petitioner's detention will end when "specified events take place," or when Petitioner is either removed or "granted asylum[,]" his detention remains indefinite (i.e. lasting for an unknown length of time).

Likewise, the *Thuraissigiam* Court observed the following fundamental propositions: "'[T]he power to admit or exclude aliens is a sovereign prerogative,' . . . ; the Constitution gives "the political department of the government" plenary authority to decide which aliens to admit, . . .; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted[.]" *Thuraissigiam*, 140 S. Ct. at 1982 (citations omitted). Here, again, Petitioner is not challenging the constitutionality of—or seeking protection exceeding—the procedures that the 'political department' set to determine whether an alien should be admitted. *Thuraissigiam* held that "an alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute[,]" but Petitioner here does not seek any "rights regarding admission" that Congress did not provide. See *id.* at 1983 (emphasis added).

In *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), the petitioner was permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries would not accept him. The issue was "whether the Attorney General's continued exclusion of respondent without a hearing amounts to an unlawful detention, so that courts may admit him temporarily to the United States on bond until arrangements are made for his departure abroad." *Id.* The Court held that the petitioner's "right to enter the United States depends on the congressional will, and courts cannot substitute their judgment for the legislative mandate." *Id.* at 216. It reasoned: "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 212 (internal quotations and quoted sources omitted). Here, Petitioner does not challenge the constitutionality of Congress's will concerning his "right" to enter, and he was not permanently excluded or "barred from entry."

7

In *Nishimura Ekiu v. United States*, 142 U.S. 651, 658 (1892) (emphasis added), the Court held that the judiciary could not review evidence of the petitioner's right to enter because that power was granted to congress, reasoning that "[i]t is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, *shall be permitted to enter*, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government." Here, Petitioner does not ask this Court to review evidence of his right to enter or to find that he is entitled to enter. He seeks a bond hearing.

The undersigned finds Respondents' arguments unpersuasive. "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. AMEND. V. All persons in the United States—regardless of their citizenship status, means or legality of entry, or length of stay—are entitled to the protections of the Due Process Clause. See *Zadvydas*, 533 U.S. at 693 (although "certain constitutional protections . . . are unavailable to aliens outside of our geographic borders . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). "A statute permitting indefinite detention of an alien would raise a serious constitutional problem. . . . Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

As the Ninth Circuit stated in *Padilla*:

> The Supreme Court has held repeatedly that non-punitive detention violates the Constitution unless it is strictly limited, which typically means that the detention

must be accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750–51, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (pretrial detention of arrestees constitutional where statute provides for "extensive safeguards," including a "full-blown adversary hearing," in which the government must "provide[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"); *Foucha v. Louisiana*, 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (individual entitled to "constitutionally adequate procedures to establish the grounds for his confinement"); *Kansas v. Hendricks*, 521 U.S. 346, 360, 364, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (civil commitment statute that provided for confinement of "only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards," did not violate due process). Indeed, the Supreme Court has required individualized hearings for far lesser interests. *See Zadvydas*, 533 U.S. at 692, 121 S.Ct. 2491 (criticizing administrative custody reviews and noting "[t]he Constitution demands greater procedural protection even for property"); *Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Immigration detention, like all non-punitive detention, violates the Due Process Clause unless "a special justification ... outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.' " *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 (quoting *Kansas v. Hendricks*, 521 U.S. at 356, 117 S.Ct. 2072). Although "[t]he government has legitimate interests in protecting the public and in ensuring that non-citizens in removal proceedings appear for hearings, any detention incidental to removal must 'bear[ ] [a] reasonable relation to [its] purpose.' " *Hernandez*, 872 F.3d at 990 (quoting *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491).

"[G]iven the substantial liberty interests at stake," *Singh*, 638 F.3d at 1200, courts have repeatedly affirmed the importance of providing detained noncitizens individualized hearings before neutral decisionmakers. *See Hernandez*, 872 F.3d at 990 (requiring "adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint" (quoting *Singh*, 638 F.3d at 1203)); *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008) (individuals subjected to prolonged detention pending judicial review of their removal orders are entitled to a bond hearing and an "individualized determination as to the necessity of [their] detention"); *see also Jennings v. Rodriguez*, ––– U.S. ––––, 138 S. Ct. 830, 862, 869, 200 L.Ed.2d 122 (2018) (Breyer, J., dissenting) (reviewing Supreme Court caselaw, which "almost always has suggested" that bail proceedings for noncitizens are necessary and that "[t]he Due Process Clause foresees bail eligibility as part of 'due process' "); *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095 ("When government

9

> action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.").

*Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1143 (9th Cir. 2020).[6] Further, as the court reasoned in *Ahad v. Lowe*, 235 F. Supp. 3d 676, 688, (M.D. Penn. 2016) (emphasis added):

> [D]eveloping case law has consistently determined that detained aliens are entitled to some essential measure of due process in the form of a bond hearing once their detention reaches an unreasonable duration. Case law extends this right in pre-and post-removal settings. It confers this right upon both aliens admitted to this country, and excludable aliens. *Indeed, it even confers this right upon aliens who have been convicted of crimes in the United States and are subject to removal due to those prior convictions*. Given the scope of the due process protections provided to detained aliens, and acknowledged by the courts in the past, it would be anomalous to completely deny this modest measure of due process to detainees held pursuant to §1225(b).

In *Zadvydas*, the Supreme Court held that aliens subject to a removal order may not be detained beyond "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. If, six months after a final order of removal, "there is no significant likelihood of removal in the reasonably foreseeable future," the alien's detention is unlawful.

Critically here, if, under *Zadvydas*, an alien "ordered deported" or "ordered removed" can only be held for six months before she or he can challenge continued detention, then, *a fortiori*, an alien who has not been ordered removed, who has in fact been granted withholding from removal, and who has been civilly detained over one year under Section 1225(b) has a due process right to an individualized bond hearing. See *Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) ("[W]e do not see how we could conclude that the indefinite and potentially permanent detention of [inadmissible aliens whose

---

[6] See also *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 449 n.32 (3d Cir. 2016) ("We doubt . . . that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance.").

parole was revoked] raises any less serious constitutional concerns than the indefinite and potentially permanent detention of the aliens in *Zadvydas*.").

Petitioner's continued detention is unreasonable: he is not accused of a crime, has been detained for over one year,[7] will likely be detained many more months (or possibly years),[8] has asserted good faith defenses against removal, [9] has won his claim for withholding of removal at at the trial level, and is not responsible for the continued delay caused by the appeal.[10,11] Thus, Petitioner's continued detention absent a bond hearing violates his right to due process.[12]

---

[7] The length of Petitioner's confinement is the "most important factor that must be considered." *Alexis v. Sessions*, 2018 WL 5921017, at *8 (S.D. Tex. Nov. 13, 2018); see *da Silva v. Nielsen*, 2019 U.S. Dist. LEXIS 227513 (S.D. Tex. 2019) (joining "the numerous other district courts that have found Section 1225(b) detention lasting more than one year unreasonable.").

[8] Petitioner writes, "A decision by the BIA [] is probably six months away . . . . The BIA may remand the case to the immigration judge for further proceedings . . . . [and a] further appeal thereafter is possible." [doc. # 1, pp. 6-7].

[9] At this stage, the Court may not inquire into the merits of Petitioner's defenses/arguments, but it is enough to note the possibility that Petitioner will not be removed, which diminishes the purpose of detaining Petitioner pending a final determination on whether he is removable. See *Lett v. Decker*, 346 F. Supp. 3d 379, 384 (S.D.N.Y. 2018). Petitioner plainly asserted a good-faith claim to withholding of removal or asylum, considering, respectively, that the immigration judge granted withholding of removal and that the newly-enacted third-country-transit rule has been held invalid by at least two other courts.

[10] DHS chose to appeal.

[11] See *da Silva*, 2019 U.S. Dist. LEXIS 227513 (adopting "the three-pronged test used by the Southern District of New York in several post-*Rodriguez* immigration habeas cases[,]" which includes examining "(1) the length of time Petitioner has already been detained; (2) whether Petitioner is responsible for the delay; and (3) whether Petitioner has asserted defenses to removal.") (internal quotation marks and quoted sources omitted).

[12] See, e.g., *N.Z.M. v. Wolf*, 2020 WL 2813557, at *2 (S.D. Tex. May 28, 2020); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442 (D.N.J. 2019); *Wang v. Brophy*, 2019 WL 112346, at *3 (W.D.N.Y. Jan. 4, 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019); *Pierre v. Doll*, 350 F. Supp. 3d 327, 332 (M.D. Pa. 2018) ("[A]rriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable."); *Destine v.*

**Recommendation**

For reasons above, IT IS RECOMMENDED that Petitioner Dzheison Ford's Petition be **GRANTED** to the extent Petitioner seeks a bond hearing before an immigration judge. An immigration judge shall conduct an individualized bond hearing within **fourteen (14) days** of the date of Judgment. At the bond hearing, Respondents bear the burden of proving by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. The immigration judge shall consider Petitioner's ability to pay a bond. If a hearing is not held within fourteen days, Respondents shall release Petitioner under reasonable conditions of supervision.

IT IS FURTHER RECOMMENDED that, within **fourteen (14) days** of the bond hearing, Respondents shall file a status report.

IT IS FURTHER RECOMMENDED that, to the extent Petitioner seeks other relief, the Petition be **DENIED**.

In Chambers, Monroe, Louisiana, this 30th day of September, 2020.

Karen L. Hayes
United States Magistrate Judge

---

*Doll*, 2018 WL 3584695 (M.D. Pa. July 26, 2018) (finding that arriving aliens have Due Process rights and that petitioner's twenty-one month detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing); *Fatule-Roque v. Lowe*, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018) (finding that § 1225(b) detainees enjoy basic due process rights, but finding that petitioner's detention was not so unduly prolonged that it rendered § 1225(b) unconstitutional as applied to him); *Lett v. Decker*, 346 F. Supp. 3d 379, 2018 WL 4931544 (S.D.N.Y. Oct. 10, 2018) (finding that arriving aliens have Due Process rights and that petitioner's nearly ten month detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing); *Perez v. Decker*, 2018 WL 3991497 (S.D.NY. Aug. 20, 2018) (finding that arriving aliens have Due Process rights and that petitioner's nearly one-year detention pursuant to § 1225(b) was unreasonable, and ordering an individualized bond hearing).